# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

STEVEN RAY WILKERSON                *

Plaintiff                           *

v                                   *        Civil Action No. JFM-11-1968

LT. ADISA                           *

Defendant                           *
                                   ***

## MEMORANDUM

Pending[1] in the above-captioned case is defendant's motion to dismiss or for summary judgment. ECF No. 44. Plaintiff opposes the motion. ECF No. 49. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, defendant's motion shall be denied.

## Background

Plaintiff Steven Ray Wilkerson ("Wilkerson") alleges he was assaulted on June 20, 2011 by defendant Lt. Adisa. ECF No. 1. Wilkerson states that at the time of the alleged assault he was incarcerated at the Maryland Correctional Institution-Jessup (MCIJ). At approximately 2:10 p.m., Wilkerson claims he was standing in line to get medication in the prison medical department when he was ordered to return to his housing unit. Wilkerson states he complied with this order and began making his way out of the area, down a flight of stairs. He claims when he was half-way down the stairs he saw correctional officers beating a handcuffed inmate. Wilkerson states he was ordered to return to the medical department. He does not state who

---

[1] Defendant's motion for extension to time (ECF No. 43) shall be granted nunc pro tunc.

issued the order.² Upon his return to the bullpen in the medical department Wilkerson claims he heard a loud bang, turned around, and saw inmate Lauron Hoyle being assaulted by several officers. Wilkerson states Officer White, who was stationed in the medical department, yelled at him when he returned and asked why he was coming back. Wilkerson explained to White that all the inmates were ordered to return to the medical department and White ordered the twenty-two inmates who had returned to go into the bullpen. Once the inmates were inside the bullpen, the door was locked.

Wilkerson states that a few minutes later Lt. Adisa came into the medical department and stated he was going to "fuck an inmate up." Wilkerson claims he asked Adisa why since none of the inmates had done anything to Adisa. Adisa responded by telling White to open the bullpen door, whereupon he went into the area and pulled Wilkerson off of the bench. Wilkerson claims that Sergeant Bey came into the medical department at that time and grabbed Wilkerson by his shirt while Adisa had him by the neck, lifting him up. Wilkerson claims other inmates who were present began telling Adisa that Wilkerson had already injured his neck and that he should not be handled in such a manner. ECF No. 1. Wilkerson states that Adisa told Bey to "let him go, I have him." Adisa then spun Wilkerson around slammed him into the wall, causing him to hit his head and snap his neck as he bounced off the wall and steel door. Wilkerson claims he felt something pop in his back and screamed in pain when Adisa slammed him into the wall. ECF No. 5 at pp. 6 – 7. Adisa took Wilkerson out of the medical department to Major Wilson's office. Wilkerson claims Wilson watched the assault inflicted on him by Bey and Adisa.

Once in Wilson's office, Wilkerson states Adisa pushed him into a desk and a chair, causing him to fall into the chair. Wilkerson claims he kept screaming about the pain in his back

---

² In a declaration under oath written by another inmate who was present during the events described, the officers allegedly beating the handcuffed inmate issued the order to return to the medical department. ECF No. 1 at p. 9.

and neck the entire time he was being led into the Major's office. ECF No. 5 at p. 7. Adisa handcuffed Wilkerson and left him the waiting area of Major Wilson's office. When Wilson stepped into the room where Wilkerson was restrained, Wilkerson told Wilson he wanted to press assault charges against Adisa. Wilson responded that Wilkerson "got what [his] hand called for." *Id*.

Lt. Janice Brown came to the area where Wilkerson was restrained and asked him what his plans were. Wilkerson responded that he needed to be seen by the medical department for his back and neck pain and he stated he wanted to press street charges against Adisa for assault. Wilkerson claims Brown cut him off and told him that if he did not want to go on lock-up he should keep his mouth shut. He claims Brown further told him he did not know when to keep his mouth shut. Brown then told Wilkerson he was going to go on lock-up. It is not clear whether Wilkerson was placed on lock-up, but he states he was released to go back to his housing unit "a short time later." ECF No. 5 at p. 8. Wilkerson claims all of the events described were video-taped by prison cameras and that photographs were taken of him between June 21, 2011 and July 2, 2011.

Adisa alleges that on June 20, 2011, a "signal 13 (officer needs assistance) was called in G housing unit." ECF No. 44 at Ex. 1. Adisa does not explain who called the signal 13 or why, but goes on to explain that Officer White was assigned as infirmary officer and was coordinating inmate movement around the infirmary pending the arrival of the Anne Arundel Emergency Medic Unit. *Id*. White attempted to secure all the inmates in the infirmary in the holding area, but Adisa claims Wilkerson became argumentative and belligerent. *Id*. Adisa alleges Wilkerson said, "I am not going to lock inside, I'm going back to my housing unit before count time." *Id*. Adisa states he told Wilkerson that the statements he was making were inciting other inmates

3

around the infirmary to be disruptive. When Wilkerson refused to comply with the order to stay inside the holding area, Adisa claims he handcuffed Wilkerson and escorted him to the supervisor's office without further incident. *Id.* In the alternative, Adisa alleges he is entitled to qualified immunity because his conduct did not violate any well-established rule of law.

Adisa further asserts that the incident involving Wilkerson and Lauron Hoyle was investigated by the Internal Investigation Unit (IIU) of the Department of Public Safety and Correctional Services (DPSCS). *Id.* at Ex. 2. The investigator found Adisa's statements regarding both incidents consistent with his written statements about Hoyle; noted that Wilkerson was seen by medical staff the following day where no injuries were noted; and "received information" that while at Howard County Hospital, Wilkerson was not threatened by Adisa. *Id.* As a result, no criminal charges were pursued.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*,

4

346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

Wilkerson opposes the motion for summary judgment with a declaration under oath. ECF No. 49. In addition, Wilkerson provided supporting affidavits from other prisoners present during the alleged assault, with the complaint. ECF No. 1. All declarations are consistent in

5

content and provide a detailed account of events.  To the extent there were video cameras in the area of the assault or pictures taken of Wilkerson on the day of the incident, that evidence has not been presented by defendant for this court's consideration.  Thus, there is a genuine dispute of material fact requiring a credibility determination not appropriate for summary judgment disposition.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

Accordingly, by separate order which follows, defendant's motion for summary judgment shall be denied.  Plaintiff's motion for assistance in obtaining documents (ECF No. 48) shall be granted to the extent he seeks to engage in discovery and counsel shall be appointed to represent plaintiff pro bono.


___April 24, 2013_____        ____/s/_____
Date        J. Frederick Motz
       United States District Judge